UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEE LAWMASTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-923-SEB-MG |
| | ) | |
| KURT SPIVEY, in his individual and official capacities, | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**Amended Complaint for Injunctive and Declaratory Relief and Damages**

**Introduction**

1. To protest the prosecution of former-FBI Director James Comey for a social media post depicting the numbers "8647,"written using shells on a beach, to express his displeasure with certain elected officials, and his belief that they should be replaced, and to exercise his rights to free expression, Lee Lawmaster posted "86" on the officials' Facebook pages. He reasonably believed that this expression of displeasure and his wish that the politicians be removed and replaced was protected by the First Amendment. Indeed, it is.

2. Nevertheless, on May 1, 2026, he was visited at his home by Kurt Spivey, the Director of Investigations for the Indiana Attorney General's office, in response to an "86" comment that Mr. Lawmaster had made on the official website of the Indiana Attorney

[1]

General. Director Spivey knew very little about Mr. Lawmaster other than that he had made this comment. Director Spivey, who displayed a badge and has arrest powers under Indiana law, informed Mr. Lawmaster that his posting of "86" was a threat and that "we could easily indict you over this today." Director Spivey cautioned Mr. Lawmaster to "tone it down a little bit" and that he "would let this one slide." Mr. Lawmaster justifiably believed that further similar comments could lead to his arrest. Because of Director Spivey's threat, Mr. Lawmaster has ceased posting his "86" comments and has ceased making any comments on elected officials' social media sites. Mr. Lawmaster's comments were not true threats and were fully protected by the First Amendment. He is therefore entitled to declaratory and injunctive relief, damages to compensate him for his injuries, and punitive damages.

**Jurisdiction, venue, and cause of action**

3.   This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

4.   Venue is proper in this district pursuant to 28 U.S.C. § 1391.

5.   Declaratory relief is authorized by Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, 2202.

6.   Plaintiff brings this case pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Constitution of the United States.

**Parties**

7.   Lee Lawmaster is a resident of Monroe County, Indiana.

[2]

8.      Kurt Spivey is the Director of Investigations for the Indiana Attorney General's office. He is sued in both his individual and official capacities.

**Factual allegations**

9.      Recently, James Comey, the former head of the FBI, was indicted for allegedly making threats to President Trump by publicly posting over the internet via Instagram a photograph of seashells that depicted "8647."

10.     The term "86" "is slang meaning 'to throw out,' 'to get rid of,' or 'to refuse service to.' It comes from 1930s soda-counter slang meaning an item was sold out. There is varying anecdotal evidence about why the term *eighty-six* was used, but the most common theory is that it is rhyming slang for *nix*." Merriam-Webster Dictionary, *Search Dictionary: What does 'eighty six' mean?*" https://www.merriam-webster.com/wordplay /eighty-six-meaning-origin (last visited May 5, 2026).

11.     The "47" in Mr. Comey's post has been widely interpreted to refer to Donald Trump, the 47th president of the United States.

12.     Mr. Lawmaster was incensed that James Comey is being prosecuted for a clear exercise of his First Amendment rights.

13.     Mr. Lawmaster is also opposed to many of the policies and actions of a number of Indiana representatives and believe they should be "thrown out" of office and gotten "rid of." He is also concerned that First Amendment rights are generally under attack.

[3]

14.    Mr. Lawmaster frequently visits and utilizes social media and views social media sites such as Facebook as important communicative tools. He reviews Facebook posts of public officials and wishes to be able to join others in making comments to the posts and has done so in the past.

15.    After hearing about James Comey's indictment, Mr. Lawmaster sought to protest the actions and policies of these elected officials referred to above, to urge that they be thrown out and gotten rid of, and to support Mr. Comey and the exercise of First Amendment rights in general.

16.    Therefore, as a form of protest as well as expressing solidarity and support for Mr. Comey, Mr. Lawmaster posted as comments on the official Facebook pages of a number of Indiana's elected leaders the number "86" followed by that official's name. The officials on whose Facebook pages Mr. Lawmaster posted these comments included Attorney General Todd Rokita, Lieutenant Governor Micah Beckwith, and Senator Jim Banks.

17.    Mr. Lawmaster did nothing other than to post "86" and the official's name (*e.g.*, "86-Rokita") on the social media sites.

18.    Mr. Lawmaster first made a comment on the official Facebook page of Indiana Attorney General Todd Rokita that said "86-Rokita" on April 29, 2026. No other comment was made at that time although, Mr. Lawmaster had commented on Mr. Rokita's official Facebook page before.

[4]

19.    Staff in the Office of the Attorney General was made aware of Mr. Lawmaster's "86" comment on the Attorney General's website and it was reported to the Attorney General's Executive Protection Director.

20.    The Executive Protection Director contacted Director Spivey and Director Spivey determined that he would visit Mr. Lawmaster.

21.    Director Spivey is the Director of Investigations for the Indiana Attorney's General's Office. He has a long history of being employed in law enforcement and he possesses arrest powers under Indiana law.

22.    Director Spivey's immediate supervisor, who reports directly to the Attorney General, was aware of the situation.

23.    Prior to visiting Mr. Lawmaster, Director Spivey did not know where else Mr. Lawmaster had made "86" comments but was aware from reviewing his Facebook page that he had engaged in other political rhetoric and speech.

24.    Upon learning of the "86" comment, Director Spivey determined that he would visit Mr. Lawmaster to determine if Mr. Lawmaster had made a "true threat."

25.    On May 1, 2026, Kurt Spivey travelled to Mr. Lawmaster's home in Bloomington. At the time of his visit, Director Spivey had little information about Mr. Lawmaster other that he had made the "86" comment.

26.    Director Spivey spoke to Mr. Lawmaster at Mr. Lawmaster's front door. The interaction was recorded by a door camera that recorded both audio and video.

27. The total interaction took slightly more than two minutes.

28. Director Spivey knocked on Mr. Lawmaster's door, and after Mr. Lawmaster answered the door and stepped out of his house, Director Spivey introduced himself and indicated that he was an investigator with the Attorney General's office.

29. Director Spivey displayed a badge to Mr. Lawmaster prior to speaking with him. The badge stated "Chief" and "Attorney General's Investigation Division" and "Investigator." Mr. Lawmaster did not read the print on the badge, but perceived it to be the badge of a law enforcement officer as it looked like a typical badge that would be displayed by a police officer.

30. The following interaction then followed:

Spivey:  Here to talk to you about some of your internet activity.

Lawmaster: Yeah.

Spivey: Okay? A post you had made recently? You know what I'm talking about?

Lawmaster: Yeah.

Spivey: 'Kay. You remember what you posted?

Lawmaster: 86 somebody.

Spivey: You know what that means?

Lawmaster: No.

Spivey: No? Are you following the news with the Comey investigation and everything on – on the news about the previous FBI director being indicted over using that term with President Trump?

Lawmaster: Yeah, I heard about it.

Spivey: Okay, so you're aware of it. So, you understand that that's what the term '86' means?

Lawmaster: Just means get rid of.

Spivey: Okay. Let's you and I have a candid talk, okay?

Lawmaster: Mm-hm.

Spivey: You have the right to freedom of speech.

Lawmaster: Mm-hm.

Spivey: You have the right to say what you want. You have the right to have whatever opinion you want. I understand that. I respect it. Okay?

Lawmaster: Mm-hm.

Spivey: But you crossed the line -

Lawmaster: Okay.

Spivey: - with a threat like that. You know, maybe you and I can come to an agreement that we kind of tone down the political rhetoric a little bit.

Lawmaster: Mm-hm.

Spivey: Okay? Alright?

Lawmaster: Okay.

Spivey: When someone comes knocking on your door, obviously it's starting to go a little too far.

Lawmaster: Mm-hm.

Spivey: Is that fair enough?

[7]

Lawmaster: [Too quiet to hear]

Spivey: Okay, how about this. Let's – uh – post your stuff, do your thing, you know, express your opinion, but when you start crossing that line that could be perceived as a threat, then we got issues and problems, right? Listen, if Comey was indicted, we could easily indict you over this today. Alright?

Lawmaster: Mm-hm.

Spivey: We don't need to do that, right?

Lawmaster: [Inaudible]

Spivey: How about if you agree to tone it down a little bit, I can go check a box saying you and I have had a talk –

Lawmaster: Mm-hm.

Spivey: - we've come to an agreement, and I can let this one slide. Does that sound fair?

Lawmaster: Mm-hm.

Spivey: Okay. Alright. Now, hopefully, we don't have to come back? Cool?

Lawmaster: Cool.

Spivey: Thank you, sir.

Lawmaster: No problem.

Spivey: Let's consider this issue, uh, put away. Okay?

Lawmaster: Okay.

Spivey: And just tone down that rhetoric.

Lawmaster:  Will do.

Spivey: Okay. Have a good day.

[8]

Lawmaster: You, too.

Spivey: Okay. Take care.

Lawmaster: You, too.

31.    At no time did Mr. Lawmaster threaten or intend to threaten anyone by posting his opinion, with numerical slang, that the politicians should leave or be turned out of office. Nor could his posting of these comments be reasonably deemed to be a threat of any sort. And Director Spivey certainly had no basis for concluding that Mr. Lawmaster intended his comments as a threat to anyone.

32.    In no way did Mr. Lawmaster "cross the line" by his post. Nor did Director Spivey have any right to demand that Mr. Lawmaster "tone down his rhetoric."

33.    Nevertheless, Director Spivey threatened Mr. Lawmaster by indicating that, like Mr. Comey, "we could easily indict you over this today."

34.    Director Spivey indicated that there was some line of expression that Mr. Lawmaster had crossed and that if he crossed it again, he was subject to prosecution.

35.    Moreover, by indicating to Mr. Lawmaster that "hopefully, we don't have to come back," Director Spivey was warning Mr. Lawmaster both that he was going to continue to be observed and that he was subject to prosecution if he did not alter his expressive activities.

36.    Following Director Spivey's visit, Mr. Lawmaster reasonably determined that he needed to self-censor and he therefore has not only stopped commenting "86" on elected

[9]

representatives' Facebook pages, but has stopped commenting altogether on the Facebook pages of elected officials as he is afraid of criminal retribution if he does so. He has also ceased to make posts to his blog.

37.    At least two persons who have made what were considered threats to the Attorney General have been or are being criminally prosecuted.

38.    Unbeknownst to Director Spivey before he visited with Mr. Lawmaster, employees of the Attorney General's office had collected information concerning Mr. Lawmaster by reviewing his Facebook page going back to 2011

39.    At least one employee of the Attorney General's office was monitoring Mr. Lawmaster's Facebook page. Upon being apprised by an employee that Mr. Lawmaster had made an "86" comment to the Attorney General's office 20 minutes before his visit to Mr. Lawmaster that day, Director Spivey texted the employee "Let's see if he post (sic) anything else maybe we'll monitor."

40.    Employees of the Office of the Attorney General have visited other persons because of their social media posts.

41.    The actions of Director Spivey have caused Mr. Lawmaster damages and harm.

42.    The actions of Director Spivey were taken maliciously or with reckless or callous indifference to Mr. Lawmaster's rights.

43.    At all times Director Spivey was acting under color of state law.

[10]

44.    Mr. Lawmaster is being caused irreparable harm for which there is no adequate remedy at law.

**Jury trial demand**

45.    Lee Lawmaster requests a jury trial on all claims so triable.

**Legal claim**

46.    The actions of Director Spivey violated the First Amendment to the United States Constitution.

**Request for relief**

WHEREFORE, Lee Lawmaster requests that this Court:

a.    accept jurisdiction of this case and set it for hearing at the earliest opportunity;

b.    declare that the defendant violated the rights of the plaintiff for the reasons noted above;

c.    enter a preliminary injunction, later to be made permanent, enjoining Director Spivey from taking any adverse action against Mr. Lawmaster because of his past social media posts using "86" or any future posts using "86" or using any language that does not amount to a true threat as defined by the United States Supreme Court;

d.    award plaintiff punitive damages, compensatory damages, and nominal damages as appropriate after a jury trial;

e.    award plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 1988;

f.    award all other proper relief.

Kenneth J. Falk
Gavin M. Rose

[11]

Stevie J. Pactor
Joshua T. Bleisch
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org
jbleisch@aclu-in.org

Attorneys for Plaintiff

[12]